[Cite as *Garfield Hts. v. Martin*, 2021-Ohio-2310.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

S/O CITY OF GARFIELD HEIGHTS,    :

    Plaintiff-Appellee,    :

                         No. 109694

    v.    :

MALCOLM MARTIN,    :

    Defendant-Appellant.    :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 8, 2021

Criminal Appeal from the Garfield Heights Municipal Court
Case No. CRB-1902407

***Appearances:***

Jeffrey M. Jerome, Garfield Heights Prosecuting Attorney, and Joseph P. Morse, Assistant Prosecuting Attorney, *for appellee.*

Myron P. Watson, *for appellant.*

MARY J. BOYLE, A.J.:

{¶ 1} Defendant-appellant Malcolm Martin brings this appeal challenging his convictions for assault and aggravated menacing. Appellant argues that his convictions are against the manifest weight of the evidence. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} The instant matter arose from an August 25, 2019 incident involving appellant and victim J.R. Appellant and the victim got into an argument in the victim's home. According to the victim, appellant slapped and choked her during the argument. The victim further alleged that appellant drew a handgun, pointed it at her, and threatened to kill her.

{¶ 3} Garfield Heights police officers were dispatched to the scene. After speaking with appellant and the victim, officers placed appellant under arrest.

{¶ 4} On August 26, 2019, a complaint was filed charging appellant with (1) assault, a first-degree misdemeanor in violation of R.C. 2903.12(A)(2), and (2) aggravated menacing, a first-degree misdemeanor in violation of R.C. 2903.21.[1] Appellant pled not guilty to the complaint.

{¶ 5} A bench trial commenced on February 28, 2020. The victim and Garfield Heights Police Officer Spence Sabelli testified on behalf of the city. Appellant testified on behalf of the defense.

{¶ 6} The victim testified at trial that she arrived home and encountered appellant inside the home. She testified that appellant put a gun to her head and asserted that he was going to kill her. (Tr. 6.) The victim explained that appellant also slapped and choked her during the encounter. (Tr. 6-7.)

---

[1] The assault charge pertains to CRB-1902407-A, and the aggravated menacing charge pertains to CRB-1902407-B.

**{¶ 7}** The victim feared for her life. She contacted her cousin and advised her cousin to call the police. Garfield Heights police arrived at the scene, and the victim informed officers what transpired with appellant.

**{¶ 8}** On cross-examination, the victim acknowledged that she texted appellant that the charges would go away if appellant paid her money. (Tr. 9.) She also conceded that she frequently argued with appellant about other women. (Tr. 11.)

**{¶ 9}** Officer Sabelli testified that he responded to the scene of the altercation. Upon arrival, appellant and the victim were outside of the home. The victim was visibly shaken. The victim informed him that appellant physically assaulted her and that she sustained injuries to her head and neck. (Tr. 14.) The victim also alleged that appellant threatened her at gunpoint.

**{¶ 10}** Officers recovered a loaded 9 mm handgun from appellant's person at the scene. (Tr. 15.) Subsequent testing confirmed that the gun recovered from appellant was operable.

**{¶ 11}** Appellant testified in his own defense at trial. Appellant acknowledged that he and the victim had an argument before police arrived at the scene. Appellant explained that when the victim returned to the residence, she confronted him about text messages and phone calls with other women that the victim observed on appellant's phone. (Tr. 27.)

{¶ 12} Appellant also conceded that he was in possession of a firearm, that he retrieved the gun before leaving the residence, and that he turned the gun over to police. Appellant denied, however, assaulting or threatening the victim. (Tr. 21-24.)

{¶ 13} Appellant alleged that the victim told him she would not appear in court if he paid her money. (Tr. 24.) Specifically, he testified that after the August 25, 2019 incident, he received text messages and phone calls from the victim and from other phone numbers with which he was not familiar. Appellant testified about the nature of these communications with the victim:

> Well, [the communications involved] a number of things. One obviously about the female that I was down entertaining. Two, [the victim], she stated that if I paid her a certain amount of money, that she would not show up in court [for] the first court date. I forgot the date. I'm sorry.
>
> I didn't, I didn't do what she asked me to do. I didn't pay her and the first court date, she showed up and I asked her when she text me — after the first court date she text me and I said I thought you wasn't going to show up if I paid you? And she said well, you didn't pay me so that's why I showed up to court. So I took that as, excuse me. I took that as a bribe like she was trying to extort me and have something over my head to keep control of the situation.

(Tr. 23-24.) The text messages were admitted into evidence at trial. *See* defense exhibits A, B, and C.

{¶ 14} At the close of trial, the trial court found appellant guilty of both charges. The trial court explained that the credibility of the witnesses was a central issue in the case and the court's verdict. (Tr. 35.) The trial court determined that the victim had been "more than honest." (Tr. 35.) On the other hand, the trial court found appellant's testimony "not to be very credible." (Tr. 35.)

{¶ 15} The trial court sentenced appellant on the assault offense to 180 days in jail, with 90 suspended, and a $100 fine.[2] The trial court sentenced appellant on the aggravated menacing offense to a suspended 180-day jail sentence and a $100 fine. The trial court placed appellant on inactive community control sanctions for three years. The trial court ordered appellant to have no contact with the victim.

{¶ 16} The trial court issued a judgment entry on February 28, 2020, setting forth its verdict and appellant's sentence. It is from this judgment that appellant filed the instant appeal challenging his convictions on April 15, 2020. Appellant assigns one error for review:

> I. The trial court finding [appellant] guilty of the charges of assault and aggravated menacing was against the manifest weight of the evidence.

## II. Law and Analysis

{¶ 17} In his sole assignment of error, appellant argues that his assault and aggravated menacing convictions are against the manifest weight of the evidence.

{¶ 18} A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997),

---

[2] On December 21, 2020, the trial court granted appellant's motion to stay execution of his sentence pending the outcome of this appeal.

quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 19} In support of his manifest weight challenge, appellant argues that "the credibility issues weighed heavily in his favor" and, as a result, "[he] was entitled to a not guilty verdict." Appellant's brief at 3. Specifically, appellant contends the trial court erred in finding the victim to be credible, and "more than honest," based on "[the victim's] admission that she committed a crime." Appellant argues that an "evaluation of [the victim's] criminal conduct is critical in analyzing and evaluating her credibility." Appellant's brief at 4. Appellant appears to argue that the victim committed the offense of soliciting a bribe.

{¶ 20} As an initial matter, we note that appellant mischaracterizes the victim's trial testimony. Appellant suggests that the victim admitted at trial that she committed or attempted to commit the offenses of bribery or extortion. Appellant's argument is unsupported by the record. The victim admitted to sending the text messages to appellant after the incident. She did not, as appellant suggests, admit to committing or attempting to commit a crime.

{¶ 21} After reviewing the record, we cannot conclude that appellant's convictions are against the manifest weight of the evidence. The record reflects that the victim's statements to police at the time of the incident were consistent with her trial testimony regarding the critical questions in this case — whether appellant

physically assaulted her during the argument and whether he threatened her at gunpoint. Officer Sabelli confirmed that the victim's statements at the scene were consistent with her testimony at trial. (Tr. 16.)

{¶ 22} Both the victim and appellant testified at trial about the text messages that were exchanged after the August 25, 2019 incident. Defense counsel cross-examined the victim regarding these text messages and prior arguments between her and appellant about other women. As noted above, appellant opined that the victim was attempting to bribe or extort him. Furthermore, the text messages were admitted into evidence at trial. Assuming, arguendo, that the victim was attempting to bribe or extort appellant in the after-the-fact text messages, this would not negate appellant's criminal conduct during the altercation.

{¶ 23} Accordingly, the trial court, as the trier of fact, had sufficient information about the text messages, the victim's purported financial motives, and the victim's purported history of jealousy to assess the credibility of the victim and her testimony. *See State v. Solomon*, 8th Dist. Cuyahoga No. 109535, 2021-Ohio-940, ¶ 59. The trial court also had sufficient information to assess the credibility of appellant. *See State v. Davis*, 8th Dist. Cuyahoga No. 107925, 2019-Ohio-4672, ¶ 66; *State v. Sumlin*, 8th Dist. Cuyahoga No. 108000, 2020-Ohio-1600, ¶ 58.

{¶ 24} As noted above, the trial court ultimately determined that the victim was more truthful and credible than appellant. The trial court concluded,

> this case comes down to credibility. Actually, the alleged victim has been more than honest. She admitted to [sending the text messages]. I find [appellant] not to be very credible. Very arrogant. I can't imagine

what he was doing at [the victim's] house to begin with. Obviously he didn't live there. [The victim] was gone. Obviously, and she may have instigated the fight, but I don't think that she would have lied about it. I think that she would have just kept fighting. I don't think she would have called the police unless she was threatened, so I find [appellant] guilty of both charges[.]

(Tr. 35.)

{¶ 25} Appellant argues that his version of the events and theory of the case were "far more persuasive" than the victim's. The defense's theory at trial was that the victim, not appellant, was the instigator of the argument, and that she fabricated the allegations against appellant in order to bribe him and profit financially, or out of jealousy. The city's theory, on the other hand, was that the argument between appellant and the victim escalated, appellant physically assaulted the victim, and appellant threatened the victim at gunpoint.

{¶ 26} "'[A] conviction is not against the manifest weight of the evidence simply because the [finder of fact] rejected the defendant's version of the facts and believed the testimony presented by the [prosecution].'" *State v. Jallah*, 8th Dist. Cuyahoga No. 101773, 2015-Ohio-1950, ¶ 71, quoting *State v. Hall*, 4th Dist. Ross No. 13CA3391, 2014-Ohio-2959, ¶ 28. The trial court, as the finder of fact, did not lose its way in resolving the conflicting theories based on the evidence presented at trial.

{¶ 27} Finally, appellant appears to argue that the victim's testimony was not believable based on the fact that she was standing outside of the residence with appellant when the police arrived on scene. He appears to suggest that the victim

would not have been standing with appellant had he physically assaulted her and threatened her with a gun. Appellant's argument is misplaced.

{¶ 28} The record reflects that appellant and the victim were not actively arguing or fighting when officers arrived on scene. There was certainly no evidence that appellant continued to assault or threaten the victim outside of the residence, or in the presence of the responding officers. Accordingly, we cannot say that appellant's convictions are against the manifest weight of the evidence based on the victim's presence with appellant outside of the residence at the time police arrived.

{¶ 29} After reviewing the record, we find appellant's convictions are not against the manifest weight of the evidence. We do not find that in resolving conflicts in the evidence, the trial court, as the trier of fact, clearly lost its way in finding appellant guilty of assault and aggravated menacing. Furthermore, this is not the exceptional case in which the evidence weighs heavily against appellant's convictions.

{¶ 30} For all of the foregoing reasons, appellant's sole assignment of error is overruled. Appellant's convictions are not against the manifest weight of the evidence.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Garfield Heights Municipal Court to carry this judgment into execution. The

defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

LARRY A. JONES, SR., J., and
MARY EILEEN KILBANE, J., CONCUR